COURT OF APPEALS
DECISION
DATED AND FILED

January 26, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1112**

Cir. Ct. No. **2018CV281**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

DITECH FINANCIAL LLC, F/K/A GREEN TREE SERVICING LLC,

PLAINTIFF-RESPONDENT,

V.

JAMES D. KRISTOF AND FAITH M. KRISTOF,

DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Shawano County: JAMES R. HABECK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. James and Faith Kristof appeal from a summary judgment granted in favor of Ditech Financial LLC, f/k/a Green Tree Servicing LLC, in a foreclosure action. We affirm.

## BACKGROUND

¶2 The Kristofs executed a note and home mortgage to Bank of America, N.A. The note was endorsed in blank. An assignment of mortgage was executed by Bank of America to Green Tree, which later changed its name to Ditech. The Kristofs subsequently executed a loan modification agreement with Ditech, which deferred a substantial amount of the principal as non-interest accruing, and significantly lowered the monthly mortgage payment.

¶3 The Kristofs allegedly failed to timely make the first monthly mortgage payment under the modification agreement. Following a subsequent late payment and a payment returned due to insufficient funds in the Kristofs' account, Ditech mailed a notice of default to the Kristofs stating that payments due for three months were delinquent. The notice of default stated that those amounts— together with late charges, non-sufficient fund charges, and additional escrow advances—were required to be paid by a date certain or the loan could be accelerated and foreclosure proceedings could be commenced.

¶4 Ditech thereafter commenced a non-deficiency foreclosure action, alleging that the Kristofs had failed to make past-due payments. The Kristofs filed a pro se answer stating, "On our behalf, this [is] our written response, we have accounting issues with the payments." Ditech subsequently served written discovery, including requests for admission, interrogatories, and requests for

production of documents. The Kristofs[1] again responded to this discovery pro se, stating in part that they could not find their paperwork or their records. Their discovery responses were never supplemented.

¶5 Ditech eventually moved for summary judgment. The Kristofs retained counsel prior to filing their submissions in opposition to summary judgment. Following a hearing, the circuit court granted Ditech's motion. This appeal follows.

## DISCUSSION

¶6 Our review of a circuit court's grant of summary judgment is de novo, and we apply the same legal methodology as the circuit court. *Chapman v. B.C. Ziegler &Co.*, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. We first determine whether the complaint asserts a proper claim for relief, and whether the answer disputes the facts that purport to underlie the claim. *Id.* If the pleadings join issue, we determine whether there are any genuine issues of material fact. *Id.* A court must grant summary judgment to a party if there is no genuine issue as to any material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[2]

¶7 The Kristofs assert that Ditech's summary judgment motion was legally insufficient for several reasons. First, the Kristofs argue Ditech could not prove it had standing to enforce the note. Specifically, the Kristofs contend that

---

[1] The discovery responses were executed only by Faith Kristof.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Ditech failed to establish its connection with Green Tree. The Kristofs further argue that the loan modification agreement was not proven to be a valid contract.

¶8      The Kristofs' arguments lack merit. The Kristofs are deemed to have admitted any allegations in Ditech's complaint that they did not deny. *See* WIS. STAT. § 802.02(4). The Kristofs answered the complaint, stating, "On our behalf, this [is] our written response, we have accounting issues with the payments." This answer did not deny—and thus admitted—the allegations in Ditech's complaint, namely that the Kristofs executed and delivered the note and mortgage to the originating lender; that the mortgage was assigned to Ditech; that the mortgage and subsequent modification agreement were recorded; and that Ditech was the holder of the note.

¶9      The Kristofs nevertheless argue that the only way to prove a party is the holder of a note endorsed in blank is by presenting a "wet ink" note in court, citing ***Deutsche Bank National Trust Co. v. Wuensch***, 2018 WI 35, ¶¶33-34, 380 Wis. 2d 727, 911 N.W.2d 1.[3] In ***Wuensch***, the court held that presentation to the trier of fact in a mortgage foreclosure proceeding of the original, wet-ink note endorsed in blank established the holder's possession and right to enforce the note. ***Id.***, ¶2. The Kristofs incorrectly interpret ***Wuensch*** as holding that "[t]his is the only way" for a foreclosing lender to establish its standing to enforce the terms of a promissory note endorsed in blank.

---

[3] The Kristofs also rely upon ***Bank of New York Mellon v. Klomsten***, 2018 WI App 25, 381 Wis. 2d 218, 911 N.W.2d 364. In that case, however, an affidavit expressly averred that the original note was in the possession of another. ***Id.***, ¶32.

4

¶10     Here, Ditech submitted an affidavit in support of summary judgment based on personal knowledge of how Ditech's business records were maintained. The affidavit authenticated the note in this case, averring that "[a] true and correct copy of the Note is attached hereto as Exhibit A, as previously on file with the Court, and incorporated herein." The note was endorsed in blank by Bank of America. The affidavit avers that "Ditech directly or through its agents, is in possession of the original Note." The affidavit further avers that a true and correct copy of the mortgage is attached as Exhibit B. An assignment of mortgage was executed by a representative of Bank of America to Green Tree, which subsequently changed its name to Ditech.

¶11     More importantly, however, Ditech's affidavit also attached a copy of the subsequent modification agreement, in which the Kristofs acknowledge that they are entering into the modification agreement with Ditech, which is identified as "Lender." The modification agreement was irrefutably signed by the Kristofs, and they attempted to make payments pursuant to its terms. Moreover, the modification agreement states that it "amends and supplements" the mortgage and original note. Ditech thus established its standing to enforce the original note.

¶12     Despite the above, the Kristofs advance the inexplicable argument that the modification agreement is legally ineffective. The Kristofs acknowledge the agreement was prepared by Ditech, but they claim the "signature acceptance line where Ditech was to sign was not signed." The Kristofs contend the signature line was "lined through," creating "at least a reasonable inference this document was not accepted by Ditech and hence did not become a contract." The Kristofs further assert the only signature is of "Cruz Cervantes," and "it's in the 'Authentication' section of the document."

¶13    The modification agreement states, "This document was prepared by Ditech Financial LLC Cruz Cervantes."  Following its recitations, the modification agreement then states, "In Witness Whereof, the Lender and I have executed this Agreement."  The Kristofs executed the document on prepared signature lines.  There was also a prepared signature line for "Ditech Financial LLC fka Green Tree Servicing LCC" as Lender.  A line was drawn through "By:  Anita L. Garvin Director, Default Services[.]"  Below that is a stamped signature block, which is signed, "By:  Cruz Cervantes Licensed Loss Mitigation Specialist."   The modification agreement was then recorded with the Shawano County Register of Deeds.  Thus, the document on its face bears sufficient indicia of a completed and binding contract.

¶14    In addition, both parties performed under the terms of the modification agreement—terms much more favorable to the Kristofs than those provided in the original note and mortgage.  In fact, the Kristofs paid the reduced monthly payment amount as set forth in the modification agreement.  It is inconceivable, therefore, that the Kristofs would now argue that the modification agreement is invalid insomuch as invalidity of the modification agreement would have placed the Kristofs even further behind in their payments.

¶15    The Kristofs further assert, "While [the] Kristof's *pro se* Answer was not as good as what a lawyer could have done for them, it clearly contests 'accounting issues with the payments.'"  According to the Kristofs, that language alone "put the amount owed at issue."  The Kristofs argue that Ditech "did not undisputedly prove all claimed loan history amounts with admissible evidence," relying upon *Palisades Collection LLC v. Kalal*, 2010 WI App 38, 324 Wis. 2d 180, 781 N.W.2d 503.  The Kristofs also argue that although they "don't deny missing some payments[,]" Ditech failed to provide the proper dollar amount in

the right-to-cure notice. The Kristofs contend their "goal is to get the proper amount owed so they can pay off the Note with a refinance or sale."

¶16 As noted, the Kristofs executed the modification agreement, agreeing to a new principal balance for the loan and reduced monthly mortgage payments. The loan was thus "reset" by the modification agreement, and all events of default related to this action occurred after the execution of the modification agreement, when Ditech was servicing the account. Only Ditech's records were therefore required to prove the Kristofs were in default and to calculate the balance the Kristofs owed. Although, as indicated in its affidavit supporting summary judgment, Ditech incorporated prior records into its own, there are no prior records that were relevant to the default, given that the default occurred after the execution of the modification agreement. Quite simply, the only business records that were relevant were Ditech's own records, which were properly considered by the circuit court on summary judgment.

¶17 The Kristofs also contest the manner in which Ditech credited the mortgage payments, and they argue that Ditech's affidavit in support of summary judgment conflicts with its attached documents. For example, the Kristofs note that Ditech's affidavit avers that payments were due July 1, 2018, and thereafter were not made, but documents attached to Ditech's affidavit show a payment made July 31, 2018. However, the Kristofs ignore that they missed earlier payments that remained due, and several other payments were reversed or returned because of insufficient funds in the Kristofs' bank account. Ditech properly applied payments as provided by the terms of the mortgage, which states in relevant part: "Such payments shall be applied to each Periodic Payment in the order in which it became due." As each payment was made, Ditech applied the payment to the oldest payment outstanding

¶18    The Kristofs' attempt to ignore the fact that they missed earlier payments does not create a disputed issue of material fact. The Kristofs provided no bank records or other proof of payment, and their affidavit in opposition to summary judgment is comprised almost entirely of arguments as to how the Kristofs believe payments should have been applied, rather than providing any facts to dispute those presented by Ditech. The undisputed facts presented by Ditech show that the loan was in default not because of the manner in which Kristofs' payments were applied by Ditech, but because the Kristofs failed to make the payments as required by the modification agreement.

¶19    Although the Kristofs contend that discrepancies in the amount due affected their ability to bring their loan current, they failed to present any evidence to show that they attempted to do so and were misled or frustrated in their efforts. The Kristofs' argument in that regard is thus a red herring. There was no genuine issue of material fact regarding application of the Kristofs' payments or the amount due.

¶20    Finally, the Kristofs argue that "unless there is a Scheduling Order shorting [sic] the automatic six month time period to amend pleadings allowed under WIS. STAT. § 802.09 and they want to amend, they have six months to amend under this statute." According to the Kristofs, "the Summary Judgment motion was premature" because at the summary judgment hearing, "with newly hired counsel, [the] Kristofs stated they would amend their pleadings within the allowed six months." The Kristofs thus argue it was improper for the circuit court to grant summary judgment when the pleadings were not yet complete, relying upon *City of La Crosse v. Jiracek Cos.*, 108 Wis. 2d 684, 324 N.W.2d 440 (Ct. App. 1982).

¶21     The ***Jiracek*** court, however, held on procedural grounds that the circuit court prematurely granted summary judgment because the motion should not have been heard before the answer to Jiracek's cross-claim was filed. ***Id.*** at 689. The ***Jiracek*** court relied upon ***Schmitt v. Osborne***, 80 Wis. 2d 19, 257 N.W.2d 844 (1977), a case where the trial court properly dismissed a motion for summary judgment made before the answer was filed. ***Jiracek***, 108 Wis. 2d at 689-90. In the present case, however, the Kristofs filed an answer. No amendment to the pleadings was ever filed by the Kristofs until after summary judgment was entered. And, regardless of the amendment, the Kristofs failed to present any evidence creating a material question of fact on summary judgment. Furthermore, the Kristofs failed to request an extension of time regarding the summary judgment hearing. The summary judgment motion was not granted prematurely.

¶22     Ditech seeks attorney fees for a frivolous appeal. Under WIS. STAT. RULE 809.25(3), an award of costs and attorney fees shall be awarded if we determine that the "party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law."

¶23     Ditech argues that the Kristofs are attempting to "draw this matter out needlessly," causing unnecessary additional expense. Ditech further argues:

> Their arguments exhibit repeated and calculated mischaracterizations of facts in the record that go beyond mere zealous advocacy and are not made in good faith. When the law is inconveniently unfavorable to their cause, the Kristofs simply ignore or misstate it. Similarly, the Kristofs ignore facts in the record which clearly support Plaintiff's position they failed to counter when they went before the Circuit Court.

¶24   Ditech contends this same pattern of behavior was exhibited in the circuit court and is also exhibited in the Kristofs' appellate briefs.  Ditech notes that the Kristofs' appendix to their principal brief in this court contains a total of four pages, and it fails to include required documents such as the findings or opinion of the court.  Of the four pages in the Kristofs' appendix, Ditech also points out that the Kristofs exclude relevant pages of the documents.

¶25   We conclude that the appendix to the Kristofs' brief falsely certifies that it complies with WIS. STAT. RULE 809.19(2)(a).  The appendix represents that it contains, among other things, "the findings or opinion of the circuit court," and "portions of the record essential to an understanding of the issues raised, including oral or written rulings or decisions showing the circuit court's reasoning regarding those issues."  However, the appendix does not contain the court's final judgment or its oral or written decision.  The Kristofs are admonished that future violations of the rules of appellate procedure may result in sanctions.

¶26   Despite the foregoing, we cannot find that the entire appeal is frivolous, a necessary finding to award attorney fees for a frivolous appeal.  *See* ***Baumeister v. Automated Prods., Inc.***, 2004 WI 148, ¶26, 277 Wis. 2d 21, 690 N.W.2d 1.  While ultimately lacking any merit, we perceive at least some of the legal arguments as being made in good faith.  We therefore decline Ditech's request that we award such fees.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.